## THE BACK RIVER NECK TURNPIKE CO. *vs.* DANIEL HOMBERG ET AL.

*Proceeding Against Turnpike Co. for Non-Repair of Road—Notice—Taking of Property.*

Defendant turnpike company was incorporated under a law which required it to maintain in good repair a road-bed of hard material of designated width and depth. The Act of 1894, ch. 607, provides that if a turnpike or toll road company shall fail to keep its road in good repair, etc., as required by its charter for the space of fifteen days, then a petition setting forth such neglect may be filed in the Circuit Court, which shall thereupon pass an order directing the sheriff to summon a jury of freeholders to meet on the road and inquire into the condition thereof and determine ' upon such view and the evidence of such witnesses as may be produced by the petitioners or the company as to the condition of the road," and return to the Court an inquisition containing their finding. If the inquisition find that the road is not in good order or of the required width, the Court may within ten days confirm the same

and order that no tolls be collected until the repairs, etc., be made. The right is reserved either to the petitioners or to the company to demand a jury trial before the confirmation of the inquisition. The statute does not in express terms provide for the giving of notice of the petition to the turnpike company, but upon the filing of the petition in this case against the defendant company, notice thereof was given by the sheriff to the president of the defendant, and he appeared before the jury of inquisition. Upon motion to quash the inquisition upon the ground of the unconstitutionality of the Act of 1894, because it fails to provide for notice. *Held*, that the Act impliedly provides for the giving of notice of the petition to the turnpike company, and notice was in fact given, and the Act is consequently not a proceeding for taking defendant's property without due process of law, but merely provided a method for compelling the defendant to comply with its charter obligations.

Appeal from an order of the Circuit Court for Baltimore County (FOWLER, C. J., BURKE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Charles F. Stein,* for the appellant.

The Act of 1894, ch. 607, is unconstitutional because it does not require that notice of the proceedings therunder be given.

Prior to the general incorporation law, chapter 471, of the Act of 1868, turnpike companies were incorporated by special acts, in almost all of which a remedy is given, where the company chartered did not keep its road in the condition reqnired by law ; and every Act containing such a remedy, *save two,* requires notice of its enforcement to be first given. In this brief is a list of such Acts, from which it appears that fifty-three of them were passed ; of which fifty-one required notice to be first given and two did not.

So that there has *not* been "a legislative construction of the validity of the Act in question."

The usual form of the remedy and provisions for notice is that set out in *Francis* v. *Weaver,* 76 Md. 460. The case of *Turnpike Company* v. *Startzman,* 86 Md. 269, is the only case involving the constitutionality of this Act, and that case did not raise the question presented by this appeal, so that there

has *not* been a "judicial recognition of the validity of the Act."

Assuming that the Act requires notice to be given of proceedings under it; this means legal notice, notice by some one duly authorized to give it. "The process of a Court must be served by some one ' duly authorized to make it.' " 19 *Ency. Pl. & Pr.*, 572; *Ibid*, 577, sec. 11, note 6; *Ibid*, 578, sec. b, note 5; *Carroll Co.* v. *Goodall*, 41 N. H. 81. The sheriff, in Maryland, is the proper person to serve all processes of Court, in the absence of a special statute authorizing some one else to do so. *Code*, sec. 5, Art. 87. Before the sheriff can make a valid service he must be duly authorized. *Code*, sec. 6, Art. 87. The sheriff's return, showing service on Mr. Henry Ruhl of a copy of the order directing the sheriff to summon a jury, is void, because made without authority. This order directed him only to summon a jury.

A legal notice should be directed to some one ; it should warn him to come forward and defend or assert his rights on or before a named day. The order of Court in this case is directed to no one—warns no one—and is not required to be served on any one. It merely directs the sheriff to summon a jury of six freeholders, *and nowhere contains the name of the appellant.* The notice must be reasonable in time. *Balto. Belt R. R.* v. *Baltzell*, 75 Md. 106; *Roller* v. *Holly*, 176 U. S. 407. The appellant is not a party to the petition.

The petition prays for no relief or process against the appellant; the mere naming of it in the bill does not make it a party. *Miller's Equity*, 104 note 1, 114 note 1; *Binney's case*, 2 Bland, 99–106; 2 *Poe's Practice*, sec. 66, 2nd ed.; 2 *Md. Code* (1888), 1152, sec. 129; *Story's Equity Pleading*, sec. 44, p. 43, 10th ed. To bring one into Court process against him must be prayed for and issued.

The copy of the order of Court was not served on the appellant within a reasonable time for it to prepare to defend its right and it is therefore not due process of law and the proceedings thereunder are void. The petition in this case had for its object the viewing of the appellant's road-bed eight and three-quarter miles long; the petition was filed on April 10th,

1902; an order was then passed thereon directing the sheriff to summon a jury of six, who were to meet on the road-bed on April 24th, 1902, at eleven o'clock A. M., a copy of this order was served on the president of the appellant on April 18th, 1902, so that excluding the day of service and the day of meeting the appellant had five clear days in which to prepare its defense, and one of these days was Sunday, leaving four days. In *Roller* v. *Holly*, 176 U. S. 409, the Supreme Court, through MR. JUSTICE BROWN, held that to constitute due process of law, a notice in time must be reasonable, and " that at least eight days notice of inquiry and of trial are essential for the preparation of the defense," and that it makes no difference that the Court would have enlarged the time given as the appellant was at liberty, even if he were not compelled to construe the notice as it read upon its face. The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion."

*John I. Yellott*, for the appellee.

It is true the Act does not provide in terms for notice to the company when complaint is made, but it contemplates that notice will be given by giving to the company proceeded against the right to be heard before the jury, to move to quash, to file exceptions and to a hearing in Court upon such motion and exceptions. No attorney would undertake to prosecute the proceeding provided for, to a hearing before the jury without such notice to the company, and it is hardly to be presumed any Court would ratify an inquisition made by the jury in the absence of the same; in this case notice was given, the company appeared before the sheriff and jury, filed its objection to the proceeding and examined and cross-examined witnesses produced by it and the petitioners.

In this case there was no surprise in the execution of the writ, and the statute does not contemplate there shall be. It indirectly provides that the Turnpike Company shall have notice of the taking of the inquisition and directly provides for a hearing before its rights are affected. This is sufficient. No

Act authorizing the taking of property by condemnation pro-
ceeding in Maryland has ever expressly provided for notice.
If notice be given before any private right is disturbed, there
is due process. *Baltzell's case,* 75 Md. 106; *Davidson* v. *New
Orleans,* 96 U. S. 105; *Walker* v. *Sauvinet,* 92 U. S. 92.

The proceeding authorized by the Act of 1894, is not one
to take property and is not one providing legal machinery
therefor. The Code, Art. 23, secs. 233 to 244, provides for
the formation of corporations to build turnpike roads upon sur-
prisingly liberal terms ; these corporations may use the beds
of our public highways, turn free roads into toll roads, and
subject those using the same to a burden of taxation in the
shape of tolls to an extent that will net to the Turnpike Com-
pany, however wasteful and extravagant, an eight per cent
dividend to its stockholders. Giving to the corporation this
liberal grant, it exacts from it in return the making and main-
taining of a good road. How good ? By sec. 233, it is re-
quired to maintain a road covered at least twelve inches with
hard material at least fifteen feet in width. The depth is re-
quired because experience has taught this is the requisite depth
to resist the winter frosts and spring thaws, and the minimum
width is fixed because it is the least that will admit of the safe
and convenient passing of ordinary country vehicles. The
maintenance of the prescribed road is a corporate obligation
to the public. A failure to live up to it must be met and cor-
rected in the public interests. Sec. 240, provided how this
failure was to be met and corrected, and the Act of 1894, is a
re-enactment of this section.

The Act nowhere provides for the taking of private property,
nor does it contemplate such thing, but provides a simple mode
for compelling a *quasi* public corporate body to live up to the
law by which it enjoys its corporate existence and its property.
It provides for an inquiry by which the Court may be informed
whether the corporation is discharging its statutory obligation
to the public, and empowers the Court upon determining that
it does not give the public a lawful road to adjudge that such
failure shall disentitle the company to take tolls from the pub-

lic so long as it fails to give the people such a road as they are legally required to pay for the use of. Other statutes provide for and other proceedings are taken for the forfeiture of the corporate property and franchises. This proceeding is for the regulation of the corporate property while the owner holds it. It simply provides that the company shall not maintain what is in fact a public nuisance. Appropriate regulation of property is not a taking. *Richmond, &c., R. R. Co.* v. *Richmond,* 96 U. S. 528; *Giffin* v. *Mayor, &c.,* 4 N. Y. 419.

BRISCOE, J., delivered the opinion of the Court.

The appellant is a body corporate duly incorporated, under the Public General Laws of the State, under the corporate name of The Back River Neck Turnpike Company of Baltimore County, for the purpose of making and constructing a turnpike road, in the Twelfth Election District of Baltimore County, not to exceed in length twelve miles.

On the 10th day of April, 1902, the appellees residents of Baltimore County filed a petition in the Circuit Court for Baltimore County, under sec. 242 of Art. 23, of the Code of Public General Laws, as amended by ch. 607 of the Acts of 1894, alleging among other things that the Turnpike Company had failed to keep and maintain its road stoned or otherwise made of hard material to a depth of twelve inches or to a width of fifteen feet as required by its charter, but had negligently permitted the road to become full of holes and to become practically unfit for use and travel by the public, contrary to law.

It was further alleged by the petition that travel on said turnpike, by reason of its condition, was rendered uncomfortable and dangerous, and that such conditions had been permitted to remain for a period of time, exceeding fifteen days before filing of the complaint, and the prayer of the petition, was for relief under the laws of the State.

The record shows that an inquisition was had and on the 28th day of April, 1902, was returned to the Circuit Court of Baltimore County, as provided by the statute and from an order of the Court overruling a motion to quash and confirm-

ing the inquisition of the jury, and directing that tolls shall not be charged, until the turnpike road shall be put in 'good order and repair and properly widened, this appeal has been taken.

The sole question in the case relates to the validity and con-stitutionality of the Act of 1894, ch. 607, amending sec. 242 of Art. 23 of the Code.    The appellant contends that this Act is unconstitutional and void, because it does not provide for any notice of the proceeding to the Turnpike Company and it provides for taking private property without due process of law in contravention of the State and Federal Constitutions.

This Act was recently before the Court in the *Turnpike Company* v. *Startzman*, 86 Md. 365, a case involving proceed-ings under the Act, and while the points here made were not directly presented in that case, we said ; the proceedings adopted and pursued in that case, could not be objected to on constitutional grounds.    Now it is quite difficult to see how and in what manner the proceedings authorized by the Act of 1894, ch. 607, can involve the question of taking private prop-erty without due process of law, as urged by the appellant, in this case.

The appellant company was incorporated under Art. 23 of the Code, sec. 233, which provides for the formation of cor-porations for making turnpike roads, and according to the express terms of its charter, it was required to have at least fifteen feet in width of the bed of its turnpike road covered with broken stone or gravel or other hard or durable materials to the depth of at least twelve inches, unless the natural bed be hard.    The Act of 1894, provides that it shall be the duty of the company, which has been incorporated to keep and maintain its road, in good order and repair, and of the proper width as required by its charter, and its failure so to do dis-entitles it to charge tolls for the use of its road by the public.

The Act does not provide for the taking of private property, in any way, but simply adopts a method or mode for compel-ling the corporation to comply with its charter obligations and the law under which it derives its powers.    Appropriate regu-

lation of the use of property is not taking property within the meaning of the constitutional prohibition. *Railroad Co.* v. *Richmond*, 96 U. S. 527; *Mayor and City Council* v. *Baltzell*, 75 Md. 98.

Upon the question of notice, we need only say that it appears from the record that notice in this case was given the company by service of a copy of the order of Court upon the president of the company. The company appeared at the hearing before the sheriff and the jury of inquisition, and subsequently at the hearing before the Circuit Court. The statute does not provide in terms for notice to the company, but it contemplates a notice by providing for a hearing before the inquisition and by the Court, and this we think is amply sufficient under the statutes. The notice in such cases, is usually provided, in the order of Court directing the proceedings.

The statute in this case baving been declared valid and constitutional, the appeal will have to be dismissed. The Act allows no appeal to this Court and the Court below being in the exercise of a special jurisdiction conferred by statute, its judgment was final and conclusive. *Jackson* v. *Bennett*, 80 Md. 77; *Smith* v. *Goldsborough*, 80 Md. 63.

*Appeal dismissed with costs.*

(Decided January 22nd, 1903.)